UNITED STATES of America, Plaintiff,

v.

**ONE 1977 36 FOOT CIGARETTE OCEAN RACER, FLORIDA REGISTRATION # FL9350CT; together with its electronics, apparel and equipment, Defendants.**

No. 84–1934–Civ.

United States District Court,
S.D. Florida,
Civil Division.

Dec. 10, 1985.

Jonathan Goodman, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Marshall Ives, John Lipinski, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SCOTT, District Judge.

This *in rem* civil forfeiture action against the defendant Cigarette Ocean Racer was tried before the Court. The United States seeks forfeiture of this racing vessel for alleged violations of 19 U.S.C. § 1595a(a), 49 U.S.C. § 781 and 21 U.S.C. § 881. Federal jurisdiction is predicated upon 28 U.S.C. §§ 1345 and 1355.

After hearing the government's case in chief, Claimant's testimony and the government's rebuttal witness, this Court, sitting as the trier of fact, entered *ore tenus* findings of fact and conclusions of law. These *ore tenus* findings and conclusions are also contained in this written order. *See Anderson v. City of Bessemer City, North Carolina,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The government's affirmative case was offered through U.S. Customs Agents Thomas Arnold. Officer Arnold's testimony consisted of two phases: (1) evidence to generate probable cause to forfeit the vessel, and (2) anticipated rebuttal evidence,

designed to counter Claimant's "innocent owner" defense.[1]

In addition to being a U.S. Customs officer, stationed in Key Largo, Florida, Thomas Arnold specializes in the location, detection and appearance of "false compartments" on vessels used to smuggle contraband.[2] Agent Arnold is a "false compartment" instructor for the U.S. Coast Guard. In addition, he has previously been accepted as an expert in the location, detention and appearance of false compartments.

Agent Arnold testified to the following:

On March 3, 1983, U.S. Customs Patrol officers received information that two air drops of marijuana had taken place near "Dog Docks"[3] and that several "Cigarette" racing vessels transporting the marijuana were heading toward Key Largo and Marathon.

The next day, the defendant vessel, a Cigarette racing boat, was found aground on Key Largo. Agent Arnold boarded and searched the vessel at approximately 3 p.m. He found approximately one (1) pound of marijuana residue. Agent Arnold conducted a field test on the residue. The test results were positive, indicating that the residue was marijuana. The marijuana residue was found in every compartment of the vessel—on the deck, inside the cabin, etc.

In addition to finding the marijuana residue, Agent Arnold also found that the interior of the forward cabin had been removed. Although the "stripped" cabin is not technically a false compartment under the meaning of 19 U.S.C. § 1703, Agent Arnold testified that drug smugglers frequently remove everything in the cabin because the smooth surface makes it easier to clean out the marijuana. In addition, removing everything in the cabin interior facilitates the placement and removal of contraband.

As indicated, the second part of Agent Arnold's testimony was, in effect, anticipated rebuttal. Specifically, Agent Arnold's testimony was designed to challenge claimant's contention that the vessel was stolen and that she met the requisite elements of the "innocent owner" defense. At the same time, Agent Arnold's testimony also bolstered the government's threshold argument that Rebecca Martinez lacked "standing" to challenge the forfeiture, despite the fact that the boat's title is in her name.

Agent Arnold testified that he has stopped and seized hundreds of vessels for violation of drug smuggling laws. Moreover, Agent Arnold has investigated countless incidents of illegal marijuana importation. He is familiar with the tactics frequently used by marijuana importers.

Initially, Agent Arnold testified that "Cigarette" racing boats are favored by drug smugglers because, among other things, they are quick. Agent Arnold has previously seized Cigarette vessels with marijuana aboard. In Agent Arnold's opinion, the defendant Cigarette vessel was worth approximately $40,000.00 to $60,000.00 when it was seized on March 4, 1983.

Besides favoring "Cigarette" vessels, drug smugglers are also inclined to use "Mirage" racing vessels, primarily for the same reasons.

As to the mechanics of how drug smugglers tend to acquire these racing vessels, marijuana importers frequently purchase the necessary vessels with cash. Using cash assets helps drug smugglers in avoiding tax liability, according to Agent Arnold. Furthermore, it makes it more difficult for law enforcement officers to trace actual ownership.

Agent Arnold also testified that the use of a "strawman"—listing the ownership of property in someone else's name—is anoth-

---

1. Claimant, Rebecca Martinez, contended that the vessel was "stolen" and that she was protected by the "innocent owner" defense.

2. Pursuant to 19 U.S.C. § 1703, vessels fitted out to smuggle merchandise into the United States through false compartments are forfeitable to the government.

3. "Dog Docks" is a landmark approximately 60 miles South of Key Largo.

er common tactic used by drug smugglers. Again, the "strawman" strategy helps mask the actual ownership. In addition, it makes it easier for the nominal owner to assert the "innocent owner" defense in a forfeiture proceeding.

Once a vessel is actually seized, drug smugglers often arrange to file a "stolen boat" report with the police, hoping to generate factual support for an "innocent owner" defense. Agent Arnold described this tactic—the "stolen boat report"—as one of the most common used by drug smugglers. He testified that he participated in or knew about several cases where a "stolen boat" report was filed even though no theft had occurred. One of the most important factors in determing the validity of a "stolen boat" report, according to Agent Arnold, is whether the report is filed before or after the seizure. If the report is filed *after* the seizure, then Agent Arnold has cause to doubt its validity, especially if it is filed a few hours after the seizure.[4]

Confronted with the "stolen boat" report scenario in this case, Agent Arnold testified that he checked with security personnel at the marina where the vessel was moored. No one there saw anything suspicious or heard anything unusual the day before the seizure.[5]

Finally, Agent Arnold testified that the defendant "Cigarette" had two new inboard/outboard engines. He testified that they appeared to be "souped up", did not seem to be original factory issue and made a substantial amount of noise. Anyone attempting to "hotwire" the vessel without keys would have to know what they were doing. Otherwise, Agent Arnold testified, the boat thief would risk causing an explosion.

In addition to calling Agent Arnold, the Assistant United States Attorney also in-troduced the deposition transcript of Emilio Gonzalez, Claimant's husband.[6] The transcript was not objected to by Claimant, who also sought to present her husband's deposition testimony.

Among other things, Mr. Martinez testified that he also owns a Mirage speedboat, which he purchased for approximately $6,000.00. He made a down payment of $2,500.00—which came from his bedroom closet—and borrowed the remainder from the seller, "Carlos." Mr. Martinez did not sign a promissory note because "Carlos" told him he could pay whenever he wanted. Mr. Martinez does not know "Carlos' " last name, nor does he know where "Carlos" lives.

Mr. Martinez also testified that his wife, the claimant, does not know much about repairing boats. She never worked on a boat. She did not intend to fix the boat, which was intended *solely* for *Mr.* Martinez's use.

In regard to the defendant "Cigarette" racing vessel, Mr. Martinez conceded that it was previously seized by police. He was not on the vessel, but testified that he never asked his friends, who were on the "Cigarette," why it was seized.

Mrs. Martinez testified on her own behalf. She testified that she owned the defendant "Cigarette." She introduced into evidence the formal title evidencing her ownership. Mrs. Martinez testified that she purchased the vessel with money from her savings. She testified that the vessel had been stolen and that she and her husband found out about it on March 4, 1983, when they went to the Marina. She also testified, albeit in summary, conclusory fashion, that (1) she did not know the vessel would be used to smuggle marijuana; (2) she believed that it was safe to keep the vessel at the marina; and (3) she did every-

---

4. In this case, the stolen boat report was telephoned in to North Miami Police approximately two hours after Agent Arnold found the marijuana.

5. Agent Arnold was interested in what happened on March 3, 1983 because Emilio Martinez, Claimant's husband, told police that the vessel had been stolen between 4 and 7 p.m. on March 3, 1983—the day before the seizure.

6. Mr. Martinez was incarcerated at the time of trial. Accordingly, his deposition transcript was admissible pursuant to Rule 32(a)(3)(C), Federal Rules of Civil Procedure.

thing possible to prevent the vessel from being used illegally.

Upon cross-examination, however, Mrs. Martinez conceded the following:

a. She never owned a boat before she bought the high-speed "Cigarette".

b. She did not know much about boats before purchasing the "Cigarette," nor did she know how to repair them.

c. She was earning approximately $290 per week, gross, when she purchased the vessel.

d. She purchased the vessel for approximately $8,200.00 in cash.

e. The cash she used to buy the vessel came from her bedroom closet. She had a checking account at the time, however.

f. She allowed her husband and his associates to work on the vessel.

g. There was no insurance on the vessel.

h. Her husband was responsible for paying the storage costs; she does not know how much he paid for the storage costs, nor to whom he paid it.

i. Her husband's boat, the Mirage, had previously been seized by police.

J. The engine of the defendant "Cigarette" cannot be started without keys and only she and her husband had keys.

k. She never drove the "Cigarette" herself and had been on it only two or three times.

In response to Mrs. Martinez's testimony, the United States called North Miami Police officer Dwight Melvin as a rebuttal witness. Officer Melvin is assigned to the marine patrol division and took the "stolen boat" report on March 4, 1983. Officer Melvin spoke only to Mr. Martinez. Significantly, Mr. Martinez told him that *he* owned the vessel. The "stolen boat" report was telephoned in to police headquarters at 5:05 p.m. and Officer Melvin arrived at the marina approximately five minutes later.

Officer Melvin testified that police were already keeping a watch on the vessel because it had been previously seized in 1982. Furthermore, police had heard that the vessel was active on the Miami River.

In any event, Mr. Martinez told him that the vessel had been stolen between 4 and 7 p.m. the previous day. Officer Melvin spoke to employees who worked on the docks. None of them heard anything unusual the day before. The defendant "Cigarette" vessel did not have any mufflers on its engines. In addition to producing noise, the engines also created a "canyon effect," thus amplifying the already loud noise from the engines. Officer Melvin did not believe the vessel would actually been stolen.

## CONCLUSIONS OF LAW

 A forfeiture proceedings is an *in rem* action brought against seized property pursuant to the fiction that the property itself is guilty of facilitating crime. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974). To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his standing as a claimant. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars in U.S. Currency*, 661 F.2d 319, 326 (5th Cir.1981).

 Standing is a threshold issue. If the claimant lacks standing, there can be no challenge to the forfeiture action. The *burden* of establishing standing is on the claimant. *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437 (11th Cir. 1984).

 The possession of bare legal title may be insufficient to establish ownership. *See United States v. One 1945 Douglas C–54 (DC–4) Aircraft, etc.*, 604 F.2d 27 (8th Cir.1979). The rationale for the rule that bare legal title may be insufficient is based on a candid determination that things are often not what they appear to be, especially in the world of drug traffick-

ing any other illegal operations. In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name. The criminal's need to hide his ownership of property is especially acute when the property itself is used in the illegal activity, such as when a high-speed boat is used to ferry contraband.

In short, courts look behind the formal title to determine whether the record title owner is a "strawman" set up to conceal the financial affairs or illegal dealings of someone else. For instance, in *One 1945 Douglas C–54*, the "claimant" delivered the purchase money and listed himself as the purchaser on the bill of sale for the defendant aircraft. Nevertheless, *another* man actually put up the purchase money—a fact that the Court viewed as an overriding consideration in determining the true ownership of the aircraft.

In the instant case, Rebecca Martinez alleges that she has standing because her name appears on various documents relating to the vessel. The United States however, disputes her claim of standing, contending that she is nothing more than a "strawman" who holds title in name only.

The Court need not address the standing issue because it finds, as set forth below, that the government established probable cause to forfeit the vessel and that Claimant failed to prove the "innocent ownership" defense by a preponderance of the evidence. Nevertheless, had it been necessary to resolve the standing issue, the Court believes that it would have ruled in favor of the government.

■ In any event, with the standing issue set aside, the government bears the initial burden of proof as it must show probable cause for the institution of the suit. 21 U.S.C. § 881(d) (1981); 49 U.S.C. § 784 (1963); *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210, 212 (5th Cir.1974). Although the facts relate to violations of criminal law, the government is not subject to the burdens traditionally associated with criminal trials. To the contrary, the government's burden is comparatively easy, even for a civil case. It only need establish probable cause, which is defined as a reasonable ground for belief of guilt supported by less than prima facie proof but more than mere suspicion. *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980); *United States v. One 1975 Ford F–100 Pick-up Truck*, 558 F.2d 755, 756 (5th Cir. 1977); *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210, 212 (5th Cir.1974).

In proving its case, the government is permitted to use certain types of evidence that is normally excluded in criminal proceedings. Specifically, hearsay evidence is admissible to prove probable cause in a civil forfeiture proceeding. *See, e.g., Bush v. United States*, 389 F.2d 485 (5th Cir. 1968); *United States v. 1964 Beechcraft Baron Aircraft*, 691 F.2d 725, 728 (5th Cir.1982); *United States v. One 1974 Porsche 911–S Vehicle*, 682 F.2d 283 (1st Cir.1982).

■ Marijuana is a "controlled substance" for the purposes of 21 U.S.C. 801, *et seq.* and is an "article" whose attempted introduction into the United States is "contrary to law" for the purpose of 19 U.S.C. § 1595a(a).

The Court concludes that the government, through officer Arnold's testimony, has shown sufficient probable cause to forfeit the defendant "Cigarette."

■ Once the government establishes probable cause, the burden of proof shifts to the claimant to prove a defense to the forfeiture. 19 U.S.C. § 1615 (1980), *United States v. One 1975 Ford F–100 Pick-up Truck*, 558 F.2d 755, 756 (5th Cir.1977), *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210, 212 (5th Cir.1974). The claimant must prove a defense by a preponderance of the evidence. *Ford F–100 Pick-up Truck*, 558 F.2d at 756.

■ "Innocence [of the claimant], in and of itself, is an insufficient defense to forfeiture," *United States v. One 1957*

*Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417 (10th Cir.1982). *See also Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 690, 94 S.Ct. 2080, 2091–92, 2095, 40 L.Ed.2d 452 (1974). To prevail on the defense of innocence, a claimant must establish that 1) he was not involved in the wrongful activity, 2) he was not aware of the wrongful activity, and 3) he had done all that reasonably could be expected to prevent the proscribed use of his property. *Pearson Yacht Company,* 416 U.S. at 689, 94 S.Ct. at 2094.

"To the extent that … forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoings, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Calero-Toledo v. Pearson Yacht Leasing,* 416 U.S. at 687–88, 94 S.Ct. at 2094.

As applied to this case, the "innocent-owner" defense can only be successful if:

1. the vessel was, in fact, stolen; and
2. Mrs. Martinez was not involved in the wrongful activity (i.e. the marijuana found on the vessel); and
3. Mrs. Martinez was not aware of the wrongful activity; and
4. Mrs. Martinez took *all* reasonable precautions to ensure that her vessel would not be stolen.

 The mere fact that the boat was stolen (assuming arguendo that it was stolen) is unsufficient to prevent forfeiture. The "defense" raised by Mrs. Martinez is almost identical to one made (unsuccessfully) by the claimant in *United States v. (1) One 30 Foot 1982 Morgan,* 597 F.Supp. 589 (M.D.Fla.1984). As in the instant case, the vessel in *One 30 Foot 1982 Morgan* was found abandoned with large amounts of marijuana residue on her decks. Similarly, the claimant there asserted that the boat had been stolen from its rented berth. The Court in *One 30–Foot 1982 Morgan* reject-

ed the "stolen boat" defense and forfeited the vessel to the United States. In doing so, the Court found that the claimant did not even meet the initial burden of establishing the alleged theft, explaining "that purported fact was in fact reported the day *after* the seizure, which strongly undermines its probative value." 597 F.Supp. at 591 (emphasis in original)[7] In any event, the Court in *One 30 Foot 1982 Morgan* held that the claimant did not do all that reasonably could be done to prevent the theft and subsequent illegal use.

Based upon both the direct and circumstantial evidence, the Court finds that Rebecca Martinez has failed to prove the innocent ownership defense by a preponderance of the evidence. In particular, the circumstances surrounding (a) the purchase, (b) the alleged theft and (c) modifications to the boat, indicate to the Court that there is insufficient evidence to sustain the innocent owner defense. *See. e.g. United States v. One 1957 Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417 (10th Cir.1982) (innocence, by itself, is insufficient to preclude forfeiture); *United States v. (1) One 30 Foot 1982 Morgan,* 597 F.Supp. 589 (M.D.Fla.1984) ("stolen boat" defense rejected).

Specifically, at least two prongs of the "innocent owner" defense were not proved. First, Mrs. Martinez did not prove that she was unaware of the wrongful activity. Second, Mrs. Martinez did not prove that she had done all that was reasonably to be expected to prevent the possible illegal use of the "Cigarette."

Accordingly, it is hereby ordered and adjudged:

1. The Court finds for the United States.
2. The Court finds against the Claimant, Mrs. Martinez.
3. The defendant "Cigarette" is hereby forfeited to the United States of America.[8]

---

7. In the instant case, the alleged theft was also reported the day *after* the seizure.

8. Pursuant to Rule 58, Federal Rules of Civil Procedure, the Court will formally enter a sepa-

rate final judgment of forfeiture in favor of the United States.