724 F.Supp. 908 (1989)
UNITED STATES of America, Plaintiff,
v.
CERTAIN REAL PROPERTY, Defendant.
No. 88-8272-CIV.
United States District Court, S.D. Florida, Miami Division.
October 10, 1989.
*909 Marilynn G. Koonee, Asst. U.S. Atty., Miami, Fla., for plaintiff.
Frank J. McKeawn, Palm Beach, Fla., Bruce W. Parrish, Jr., Daniel A. Hershman, W. Palm Beach, Fla., for defendant.

MEMORANDUM OPINION
SPELLMAN, District Judge.
This in rem civil forfeiture action was tried before this Court, sitting as finder of fact, on June 7 and 8, 1989. Having heard the testimony in the case and having reviewed the exhibits, this Court hereby enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

Jurisdiction
This Court has jurisdiction pursuant to 28 U.S.C.A. Sections 1345 and 1355.

*910 Facts

The Defendant Property
In 1975, Conrad Uttal, Sr., purchased Unit # 405, Villas on the Green, Phase 3, located at 717 U.S. Highway No. 1, Jupiter, Florida. On February 25, 1985, he sold the defendant Unit to his parents, William and Henrietta Uttal, as he was in need of money. Mr. Uttal and his sons, Christopher, seventeen years old at the time, and Conrad Jr., an adult, were permitted to remain in Unit # 405 rent free.
On May 21, 1986, William Uttal died. His wife, Henrietta Uttal executed her Will approximately one year later, to the day and died on October 10, 1987. On the date of her death, Henrietta Uttal owned the defendant property, Unit # 405 Villas on the Green, Jupiter, Florida. Her Will bequeathed the property to First National of Palm Beach, as Trustee of the Conrad C. Uttal Trust. Conrad C. Uttal, Sr., and his sons, Conrad Jr. and Christopher Uttal, were the named beneficiaries of said trust. Pursuant to the terms of the Conrad C. Uttal Trust, the Trustee is to hold defendant property in trust for Conrad Uttal, Sr., during his lifetime, and upon his death, liquidate the property and distribute the proceeds among his issue, Conrad Jr., and Christopher Uttal.[1]
First National in Palm Beach, as Trustee of the Conrad C. Uttal Trust, is the devisee of defendant property, pursuant to Florida Statute Section 731.201(9) which provides as follows: "Devisee means a person designated in a will to receive a devise. In the case of a devise to an existing trust or trustee, or to a trustee of a trust described by will, the trust or trustee is the devisee. The beneficiaries of the trust are not devisees." As Trustee of the Conrad C. Uttal Trust, First National in Palm Beach holds the legal interest in the trust. Conrad Uttal, Sr., Conrad Uttal, Jr., and Christopher Uttal, as beneficiaries under the trust, hold the equitable interest in the trust.
Claimants, Judith Uttal and Robert Uttal, are not beneficiaries under the Conrad C. Uttal Trust, rather they are the administrators and personal representatives of the Estate of Henrietta Uttal. As personal representatives of the Estate, they had a duty to inspect the property, or to take some action to ensure that the property was not subject to waste, or involved in illegal activity.
Neither Judith nor Robert Uttal went to the defendant property after their appointment as personal representatives by the Court on November 5, 1987. Nor did they inspect the property upon learning of the arrest and seizure of the property. If their conduct were relevant to this Court's decision, it would find that Judith and Robert Uttal, as personal representatives of the defendant property, breached their fiduciary obligations based upon their failure to inspect defendant property subsequent to their appointment as personal representatives. However, as discussed below, such a finding is unnecessary in determining the ultimate issue of innocent ownership.
The Arrest and Conviction of Conrad Uttal, Sr.
On January 22, 1988, agents of the Drug Enforcement Administration (DEA) received *911 a call from Pfaltz & Bauer, a chemical supply company located in Waterbury Connecticut. The agents were informed that an individual identifying himself as Dr. Uttal had placed an order for phenylacetic acid, a precursor ingredient to P2P, phenyl-2-propanone, a controlled substance under 21 U.S.C.A. Section 801.[2] Pfaltz & Bauer decided to reporte the order to DEA because of the unusually large size of the order.
Upon further investigation, DEA discovered that in 1986, Pfaltz & Bauer had reported a large order for phenylacetic acid to the Florida Department of Law Enforcement. In response to this report the Florida Department of Law Enforcement investigated and discovered that Conrad Uttal, Sr., had placed the order phenylacetic acid under the alias, Dr. West. Upon receipt of this information, the DEA launched an investigation into Conrad Uttal, Sr., and his activities at Unit # 405, 717 U.S. Highway One.
Special Agent Louis Weiss, Jr. contacted local and national chemical companies and learned that an individual identifying himself as "Dr. Uttal" from Omega General Research and Development had ordered various chemicals from them. Conrad Uttal, Sr., used that and other aliases, including "Michael Solis" and "Dr. West", when placing orders for drugs. Weiss also learned that Conrad Uttal, Sr., as "Michael Solis", was receiving chemicals at a post office box company.[3] Weiss was informed that the post office box company had refused to accept any further deliveries on behalf of Michael Solis because of the hazardous nature of the chemicals. The investigation further revealed that Conrad Uttal, Sr., had been arrested in 1981 for conspiracy to distribute Methequalude and for federal firearms violations.
On January 26, 1988, the D.E.A., agents from the Bureau of Alcohol, Tobacco and Firearms (A.T.F.), the Palm Beach County Sheriff's Department and the Jupiter Police Department, commenced around the clock surveillance of defendant property. Law enforcement officers observed four plastic gallon bottles containing chemicals, outside the front door of the unit. In addition, DEA Agents smelled a "very, very strong rotten egg smell" emanating from defendant property.
Based upon his training, and after consultation with a D.E.A. chemist, Agent Weiss identified this "rotten egg" or "sulfur-like" odor, as that emitted by P2P.[4] Based upon the foregoing, Agent Weiss applied for and obtained a warrant to search Unit # 405. Weiss and officers from A.T.F., D.E.A., and the local police departments, executed the warrant on January 28, 1989, at 10:00 A.M. The search party stopped Conrad Uttal, Sr., in his automobile a short distance from his residence.
Weiss testified that even then, some blocks from defendant property, he could detect the "rotten egg" odor on the person of Conrad Uttal, Sr., and in the vehicle itself. The D.E.A. agents subsequently returned with Conrad Uttal, Sr. to the premises and executed a duly authorized search of the premises. Conrad Jr. and Christopher Uttal were both present during execution of the search.
Conrad Uttal, Sr., and his two sons, Conrad Jr., and Christopher, were the sole occupants of the defendant property at the time of this search and seizure. Shortly before this search a fire erupted in the dwelling. The fire had erupted during the *912 cooling process of the P2P, a fairly common occurrence. Conrad Jr., discovered the fire and alerted Conrad Uttal, Sr. Both Conrad Jr. and Christopher Uttal were present at the time of the fire.
The search revealed various chemical compounds at the front door, in the kitchen, and on the back patio. Various printed materials with directions on how to manufacture controlled substances were found lying on the floor in one of the bedrooms that was used as an office. Numerous bottles of chemicals were found inside the Unit. All of the aforementioned items were lying in plain view and could be seen by any one who entered the Unit. Drug paraphernalia and marijuana residue were found in the bedroom where Christopher Uttal slept. A "very, very strong rotten egg smell" permeated the Unit.
The search further revealed a crude laboratory on the patio which contained the precursor P2P.[5] Agent Weiss testified that a portion of the laboratory consisting of a work bench, a hot plate, and P2P, was visible from the living room. Based upon the foregoing evidence, law enforcement officers arrested Conrad Uttal, Sr. and charged him with possession of firearms by a convicted felon and manufacture of a controlled substance.[6] Conrad Jr. and Christopher Uttal were also briefly detained, but neither son was charged with any crime resulting from the search.
Conrad Uttal Sr., confessed to having manufactured the controlled substance found at his home and was subsequently convicted of manufacturing P2P. He served one (1) year in jail and was sentenced to three (3) years probation resulting from the arrest.
The Forfeiture of Unit #405, 717 U.S. Highway 1, Jupiter, Florida
On June 6, 1988, the United States instituted this in rem action seeking forfeiture of defendant real property on the grounds, inter alia, that it had been used, or was intended to be used, to commit or facilitate the commission of a felony in violation of Title 21, and was thus subject to forfeiture under 21 U.S.C.A. Section 881(a)(7). Claimants stipulated to probable cause.
Conrad Uttal, Sr. and his sons were personally served with process. Conrad Uttal, Sr., failed to file a Verified Notice of Claim to defendant property, as required by Rule C(6), Supplemental Rules of Admiralty. Hence, the Clerk of this Court entered a default against him on May 10, 1989. Conrad Jr. and Christopher also failed to file a Verified Notice of Claim, and a default was entered against them by the Clerk. Claimants, Judith Uttal and Robert Uttal, as personal representatives of the Estate of Henrietta Uttal, have filed an Amended Verified Claim and Answer.
By Order dated May 26, 1989, this Court denied the Trustee's Motion to Intervene and File a Verified Claim. In denying the Motion to Intervene, the Court held that the Trustee's interest in the defendant property was derived from that of the Estate, and as the personal representatives of the Estate had filed a Verified Claim, the Trustee's interest has been adequately protected.
Based on Conrad Uttal, Sr.'s plea of guilty to the charge of possession of a controlled substance at the defendant premises, this Court finds that Conrad Uttal, Sr. had actual knowledge of the illegal use of defendant property, and hence cannot be considered an innocent owner. Based upon evidence adduced at trial, this Court finds that Conrad Uttal, Jr., and Christopher Uttal had actual knowledge of the illegal use of defendant property, and also cannot be considered innocent occupants.
The personal representatives, Judith and Robert Uttal, have standing to contest this forfeiture only to the extent that they represent the interest of the beneficiaries. To the extent that they challenge this forfeiture independent of the named beneficiaries, they lack standing. They assert *913 the defense of innocent ownership under 21 U.S.C.A. Sections 881(a)(6) and (a)(7).
As the personal representatives of the Estate, Judith and Robert Uttal stand in the shoes of the beneficiaries and are limited by the actions and knowledge of the beneficiaries. They may disclaim knowledge of illegal activity only to the extent that the beneficiaries can so disclaim. Actual knowledge of the proscribed activity held by the beneficiaries is imputed to their personal representatives. Therefore, this Court finds that Claimants have failed to establish innocent ownership under 21 U.S. C.A. Sections 881(a)(6) and (a)(7).

Conclusions of Law

I. Innocent Ownership under 21 U.S. C.A. Section 881(a)(7)
A forfeiture proceeding is an in rem action brought against seized property pursuant to the legal fiction that the property itself is guilty of facilitating crime.[7] To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his standing as a claimant.[8] Claimants, Judith and Robert Uttal, as personal representatives of the Estate of Henrietta Uttal, lack standing to contest the instant forfeiture independent of the interest, actions, and knowledge of the beneficiaries, Conrad Uttal, Sr., Conrad Jr. and Christopher Uttal.
Once claimant establishes the requisite standing, the Government bears the initial burden of proof as it must show probable cause for the institution of the forfeiture action.[9] "Probable cause" for forfeiture is defined as "reasonable grounds for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." United States v. A Single Family Residence, 803 F.2d 625, 628 (11th Cir.1986). Claimants herein have stipulated to probable cause for the institution of this action.
Once the Government establishes probable cause, the burden of proof shifts to the claimant to prove a defense to the forfeiture.[10] Claimant must prove a defense by a preponderance of the evidence. United States v. One 1975 Ford F100 Pick-up Truck, 558 F.2d 755, 756 (5th Cir. 1977); United States v. One 1971 Chevrolet Corvette Automobile, 496 F.2d 210 (5th *914 Cir.1974). Innocence of the claimant, in and of itself, is an insufficient defense to forfeiture. To prevail on the defense of innocence, a claimant must establish that (1) he was not involved in the wrongful activity, and (2) he was not aware of the wrongful activity. Calero-Toledo v. Pearson Yacht Leasing, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In certain cases, courts have imposed the additional requirement that claimant establish that he did all that reasonably could be expected to prevent the proscribed use of the property. Id.[11] Thus a Claimant seeking to employ the innocent owner defense must satisfy a heavy burden of proof to sustain this defense.
Claimants, Judith and Robert Uttal, rely upon the provisions of 21 U.S.C.A. Section 881(a)(7) as their defense. This statute provides as follows:
all real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment shall be forfeited under this paragraph, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without knowledge or consent of that owner. (emphasis added).
To succeed on this defense, a claimant must establish that he did not know of, nor consent to, the proscribed use of defendant property. As noted supra, some courts have required claimant to prove not only that he lacked knowledge of the illegal activity, but in addition, that he did everything reasonably possible to prevent the illegal activity.[12] These courts typically cite to the Supreme Court case Calero-Toledo v. Pearson Yacht Leasing Co., in support of this proposition. This Court finds, however, that the tripartite test set forth in Calero-Toledo is inapplicable, when the "innocent owner" defense is being claimed under 21 U.S.C.A. Section 881(a)(7).[13]
21 U.S.C.A. Section 881(a)(7) contains a statutory "innocent owner" provision within the language of the statute itself. That is, the express language of the statute provides an exemption from forfeiture for those owners who lack actual knowledge of the proscribed activity. Section 881(a)(7) differs markedly from the forfeiture statute with which the Supreme Court dealt in Calero-Toledo. That forfeiture statute lacked the express "knowledge or consent" defense contained in Section 881(a)(7). Because Calero-Toledo did not involve the statutory "innocent ownership" defense contained in 21 U.S.C.A. Section 881(a)(7), the third prong of the Calero-Toledo test for "innocent ownership" is inapplicable to forfeiture actions instituted pursuant to 21 U.S.C.A. Section 881(a)(7).
Although the Eleventh Circuit has not addressed this issue, its decision in U.S. v. Four Million, Two Hundred Fifty-Five *915 Thousand Dollars, 762 F.2d 895, 906, n. 24 (11th Cir.1985), indicates that if squarely faced with this issue, the Court of Appeals would find Calero-Toledo inapplicable to forfeiture actions instituted pursuant to 21 U.S.C.A. Section 881(a)(7). In that case, the Eleventh Circuit refused to extend the rationale of Calero-Toledo to Section 881(a)(6), the sister statute to Section 881(a)(7), which contains an identical statutory innocent owner provision:[14]
Because Calero-Toledo did not leave the statutory "innocent owner" defense continued in 21 U.S.C.A. Section 881(a)(6), we question the government's invocation of the Calero-Toledo dicta in this case. Nevertheless, because we find that the Ghitis failed to meet the "actual knowledge" standard, we leave for another day the question of the applicability of the Calero-Toledo dicta to forfeiture actions under 21 U.S.C.A. Section 881(a)(6). Id.

The Fourth Circuit Court of Appeals has similarly refused to extend the rationale of Calero-Toledo to forfeiture statutes which contain a statutory innocent owner defense. In United States v. $10,694.00 U.S. Currency, 828 F.2d 233, 234 (4th Cir.1987), the Fourth Circuit, in analyzing the innocent owner provision under 21 U.S.C.A. Section 881(a)(6), found "nothing in the plain language of Section 881(a)(6) requiring courts to look to the objective rather than subjective knowledge of the owner when determining whether forfeiture is proper." The court continued:
Moreover, in the only decision which has addressed this issue, the Eleventh Circuit construed the knowledge standard in Section 881(a)(6) to be subjective. United States v. $4,255,000.00, et al., 762 F.2d 895 (11th Cir.1985). We are persuaded by the Eleventh Circuit's analysis and likewise conclude that Section 881(a)(6) envisions an actual knowledge inquiry. Therefore, we find no error in the District Court's decision to supply a subjective standard.
In the most recent case addressing the issue, U.S. v. One Parcel of Real Estate, Case No. 88-14167-CIV-DAVIS, (Davis, J.) (S.D.Fla. August 18, 1989), the district court held that the third prong of the Calero-Toledo test for "innocent ownership" is inapplicable to forfeiture cases instituted under 21 U.S.C.A. Section 881(a)(7).[15] *916 Hence, to establish "innocent ownership" under Section 881(a)(7), a claimant need only prove by a preponderance of the evidence that he did not know of, nor consent to, the proscribed use of defendant property.[16]
Based upon the foregoing precedent, this Court finds that 21 U.S.C.A. Section 881(a)(7) imposes no requirement that a person who claims the status of an "innocent owner" establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of his property. It is enough, under the statute, that the owner establish that the proscribed act was committed "without the knowledge or consent of that owner." Thus, Claimants, Judith and Robert Uttal, need only demonstrate by a preponderance of the evidence that they lacked actual knowledge of the proscribed activity on defendant property; they need not demonstrate that they did all that was reasonable to prevent the proscribed use of the property.[17]

II. Claimants Failure to Establish Innocent Ownership
As a matter of law, Claimants, as personal representatives of the Estate, have no standing to interpose an innocent owner defense independent of the named beneficiaries, Conrad Uttal, Sr., Conrad Jr., and Christopher Uttal. To the extent that Claimants have standing to challenge the forfeiture as personal representatives, their challenge cannot go forward or exceed that taken by the beneficiaries. They are bound by the deeds and knowledge of the beneficiaries on whose behalf they act. Consistent therewith, Claimants can assert defenses to this forfeiture action only to the extent that the beneficiaries can assert them.[18]
Upon review of the evidence adduced at trial, it is the opinion of this Court that Claimants have failed to establish "innocent ownership" within the purview of Section 881(a)(7). Applying the "actual knowledge" test of Section 881(a)(7) to the instant case, this Court finds that the beneficiaries had knowledge of the illegal activity, and that this knowledge is imputed to the personal representatives. Conrad Uttal, Sr., plead guilty to the criminal indictment charging him with possession of a controlled substance at the defendant premises. Hence, this Court finds that Conrad Uttal, Sr., had actual knowledge of the illegal use of defendant property, and cannot be considered an innocent owner. This Court further finds that Conrad Uttal, Jr., and Christopher Uttal had actual knowledge of the illegal use of defendant property, as they lived at defendant premises during the proscribed activity and were present at the time of search and seizure.
The fact that Conrad Jr. and Christopher were young in age does not, of itself, establish innocent occupancy, especially where these young men were, in fact, very sophisticated regarding such matters. The search of the premises uncovered evidence of Christopher's own use of drugs. Furthermore, the prolonged presence of the malodorous chemicals and drug manufacturing *917 manuals is sufficient to put even a seventeen year old of average intelligence on notice to inquire whether some illicit activity was taking place, not to mention an adult. Hence, they cannot be considered innocent owners.
Based upon the foregoing, it is the opinion of this Court that Claimants have failed to establish the defense of innocent ownership, as the beneficiaries had actual knowledge of the illegal activity, and said knowledge is imputed to Claimants in their capacity as personal representatives. Accordingly, it is hereby
ORDERED AND ADJUDGED that defendant property, Unit # 405, Villas on the Green, Phase 3, located at 717 U.S. Highway No. 1, Jupiter, Florida, is forfeited to the United States of America. It is further ORDERED AND ADJUDGED that Plaintiff is directed to submit a Judgement of Forfeiture within ten (10) days of this Order.
DONE AND ORDERED.
NOTES
[1] Article 7 of the will provides in pertinent part:

The Trustee shall hold and manage the assets of the CONRAD C. UTTAL TRUST for the use and benefit of my son, CONRAD C. UTTAL and his issue, and shall distribute the income and principal of the trust in the following manner:
7.1 With reference to the Real Property which forms a part of this trust, I direct my Trustee as follows:
(A) My son, CONRAD C. UTTAL, and his issue, shall have the exclusive right of use and occupancy in and to the Real Property for and during CONRAD'S lifetime;
(B) Commencing with the date of my death and continuing during the administration of this trust, the Trustee shall pay, from the net income of this trust, and, to the extent that the net income is insufficient for this purpose, from the principal of this trust, certain expenses incurred in connection with the use of the Real Property by my son, CONRAD or his issue, limited to condominium maintenance charges and special assessments, real estate taxes, insurance, upkeep and maintenance, but specifically excluding utilities.
(C) Upon the death of my son, CONRAD, or upon my death if my son predeceases me, the Real Property shall be sold, and the net proceeds therefrom distributed to the issue of my son, CONRAD, who are then living or deceased with issue surviving, in equal shares, per stirpes.
[2] Phenylacetic acid is a precursor used in making P2P, Methamphetamine and Amphetaminer.
[3] Agent Weiss interviewed an employee of the post office box company, and said employee identified Conrad Uttal, Sr., as an individual he knew as Michael Solis. The post office box office employee reported that during the previous week, Conrad Uttal, Sr., had received a delivery marked hazardous material from Eastman Kodak.
[4] Agent Weiss testified that he had smelled the odor before, during his training period with D.E.A. and recognized it as that emitted by P2P. As a safeguard, Agent Weiss contacted the D.E.A. chemist and described the chemicals seen on the premises, and the odor. Based on the information supplied by Agent Weiss, the chemist opined that the controlled substance P2P was being manufactured on the premises.
[5] The precursor P2P was found on the back patio in a pyrex dish on a hot plate.
[6] Two nine millimeter semi-automatic pistols were found in defendant premises. One of the firearms was loaded.
[7] Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-84, 94 S.Ct. 2080, 2090-92, 40 L.Ed.2d 452 (1974); United States v. One (1) 1983, Fifty-Seven Foot (57) Gulfstream Vessel, 640 F.Supp. 667, 672 (S.D.Fla.1986); United States v. One 1977 36 Foot Cigarette Ocean Racer, 624 F.Supp. 290, 294 (S.D.Fla.1985). Property is used to "facilitate" an illegal activity if it "makes easy or less difficult" the activity. United States v. One 1980 Bertram 58' Motor Yacht, 876 F.2d 884, n. 3 (11th Cir.1989); United States v. One 1971 Chevrolet Corvette, 496 F.2d 210, 212 (5th Cir.1974).
[8] United States v. Three Hundred Sixty Four Thousand Nine Hundred Dollars in U.S. Currency, 661 F.2d 319, 326 (5th Cir.1981); United States v. One (1) 1983, Fifty-Seven Foot (57) Gulfstream Vessel, 640 F.Supp. at 672; One 1977 36' Foot Cigarette Ocean Racer, 624 F.Supp. at 294. If the claimant lacks standing, there can be no challenge to the forfeiture action. The burden of establishing standing is on the claimant. United States v. Five Hundred Thousand Dollars, 730 F.2d 1437 (11th Cir.1984); One 1977 36' Foot Cigarette Ocean Racer, 624 F.Supp. at 294. The possession of bare legal title may be insufficient to establish ownership. E.g., United States v. One 1945 Douglas C-54 (DC-4) Aircraft, etc., 604 F.2d 27 (8th Cir.1979).
[9] United States v. One 1980 Bertram 58' Motor Yacht, 876 F.2d 884 (11th Cir.1989); United States v. One 1971 Chevrolet Corvette Automobile, 496 F.2d 210, 212 (5th Cir.1974); One 1977 36 Foot Cigarette Ocean Racer, 624 F.Supp. at 295.

In most instances, the Government must show by probable cause that the property was used, or intended to be used, to facilitate the transportation, sale, receipt, possession, or concealment of contraband. Property is "intended to be used" for an illegal activity when a person contemplates using the property in the future, and that person actually takes some "minimum initial step" to use the property. It is the state of mind of the criminal with respect to the property which is determinative, not whether the property is actually used to execute the criminal intentions, or whether it is even possible to consummate those intentions. United States v. One 1980 Bertram 58' Motor Yacht, 876 F.2d 884 (11th Cir.1989).
[10] In the instant case, the parties have stipulated that the Government has sustained its burden of showing probable cause to believe the defendant property was used to facilitate a transaction under 21 U.S.C.A. Section 881(a)(7) (West 1981 & Supp.1989). Thus, the burden has shifted to the Claimants.
[11] As stated by the Supreme Court in Calero-Toledo:

It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent.... Similarly, the same might be said of an owner who proved not only that he was uninvolved and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property. For in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.
Id. at 663, 94 S.Ct. at 2080.
[12] See United States v. One Single Family Residence, 699 F.Supp. 1531, 1534 (S.D.Fla.1988) (Aronovitz, District Judge).
[13] Plaintiff, the United States, contends that Claimants, the personal representatives, are not innocent owners as they have failed to establish the innocent owner defense under Calero-Toledo: Claimants have failed to establish that (1) they were not involved in the wrongful activity, (2) they were not aware of the wrongful activity, and (3) they did all that reasonably could be expected to prevent the proscribed use of the property. Calero-Toledo v. Pearson Yacht Leasing, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

Claimants contend that the third prong of the Calero-Toledo test for "innocent ownership" is inapplicable to a forfeiture suit instituted pursuant to 21 U.S.C.A. Section 888(a)(7), because the statute itself contains a an express innocent owner defense.
[14] 21 U.S.C.A. Section 881(a)(6) provides as follows:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, ... used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner. (emphasis added).
[15] The district court stated as follows:

... [Calero-Toledo] is inapplicable, however, when the `innocent owner' defense is being claimed under 21 U.S.C.A. Section 881(a)(7) (West 1981 & Supp.1989). Calero-Toledo dealt with constitutional defenses to a forfeiture statute which did not incorporate the express `knowledge or consent' defense contained in Section 881(a)(7). Instead, the statute in Calero-Toledo merely provided that aircraft, vehicles or vessels used or intended for use to facilitate the transportation, sale, receipt, possession or concealment of narcotics could be forfeited to the government. The only exception to this statute was when the owner did everything `reasonably possible' to prevent the use of the property in the illegal manner.
If the legislature intended to incorporate the `reasonable standard' defense of Calero-Toledo into Section 881(a)(7), they could have done it considering Section 881(a)(7) was enacted ten years after the Calero-Toledo decision. As the Eleventh Circuit stated in U.S. v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895, 906 n. 24 (11th Cir.1985), `[b]ecause Calero-Toledo did not involve the statutory "innocent ownership" defense contained in 21 U.S.C. Section 881(a)(6), we question the government's invocation of the Calero-Toledo dicta in this case.' Furthermore, 21 U.S.C.A. Section 881(a)(4)(c) (West 1981 & Supp.1989), which was enacted during the same time as Section 881(a)(7), the legislature did explicitly provide for the `reasonable standard' defense in cases involving the forfeiture of vessels, aircraft and vehicles, as opposed to real property which is covered under Section 881(a)(7). Thus, a claimant can succeed on the `innocent owner' defense under Section 881(a)(7) by merely proving that he lacked knowledge of the illegal activity and that he did not consent to the activity. If this were not true, then the interpretation of the statute would be inconsistent with the policy behind the forfeiture statutes. Forfeitures are disfavored in the law. They are `intended to impose a penalty only upon those who are significantly involved in a criminal enterprise.'
[16] See also, U.S. v. Certain Real Property on the Premises Known as 171-02 Liberty Avenue, Queens, New York, 710 F.Supp. 46, 48 (E.D.N.Y. 1989), wherein the district court squarely held that the Calero-Toledo test is irrelevant under Section 881(a)(7), and notes that the Calero-Toledo line of cases deals with statutes that do not have any express innocent owner defense contained within them.
[17] Judith Uttal and Robert Uttal, as personal representatives of the Estate, had a duty to inspect the property, or to take some action to ensure that the property was not subject to waste, or involved in illegal activity. This Court finds that Claimants breached their fiduciary obligations as personal representatives, based upon their failure to inspect the defendant property subsequent to their appointment as personal representatives and administrators of the Estate. The Court speaks of this duty, and its subsequent breach, without regard for the requirements espoused in Calero-Toledo.
[18] Based upon the foregoing, this Court finds Claimants personal claim of lack of knowledge irrelevant.