**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL OF PROPERTY LOCATED AT ROUTE 27, BOX 411 (PATTERSON ROAD), MONTGOMERY COUNTY, ALABAMA, with all Appurtenances and Improvements Thereon, Defendant.**

Civ. A. No. 92–D–666–N.

United States District Court,
M.D. Alabama, N.D.

Nov. 30, 1993.

John T. Harmon, Asst. U.S. Atty., Montgomery, AL, for plaintiff.

Malcolm N. Carmichael and Patricia Anne Hamilton, Montgomery, AL, for defendant.

Tax Collector of Montgomery County, Ala., pro se.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court for entry of final judgment. After agreeing that the case could be submitted on briefs, both the United States and the claimant, AmSouth Bank, filed their briefs on August 23, 1993. The government then filed a reply brief on September 7, 1993, while the claimant filed its reply on September 8, 1993. For the reasons set forth below, judgment is to be entered in favor of the claimant.[1]

### FACTS

On June 6, 1993, the United States of America filed a verified complaint for forfeiture in rem pursuant to 21 U.S.C. § 881, seeking forfeiture of the defendant real property located at Route 27, Box 411 (Patterson Road), Montgomery, Alabama. The government alleged that the real property and all appurtenances and improvements thereon were used or intended to be used by Elizabeth Ray Thames to commit or to facilitate the commission of a violation of Title II of the Controlled Substance Act. Thereafter, AmSouth Bank ("AmSouth"), filed a verified claim, asserting ownership in fee simple absolute of the defendant real property and denying that the United States is entitled to

---

1. At the pretrial conference in this case, the undersigned called to the attention of the attorneys of the parties its personal involvement with one trust, and others to be, at AmSouth Bank. It also informed the attorneys that many years ago (15 to 20) the undersigned on one occasion counseled the beneficiary of the instant trust. The attorneys for the parties after being so informed, were *invited* to file motions for recusal. None did so.

relief. The claimant maintains that it is an "innocent owner" under 21 U.S.C. § 881.

AmSouth owns in fee simple absolute the defendant real property. (Joint Stipulation of Facts at 1). AmSouth acquired title to the property as part of the funding of a one million dollar trust. This trust was established by Elizabeth W. Thames, through her Last Will and Testament, and named her daughter Elizabeth R. Thames ("Sister") as the income beneficiary during her lifetime. The will allocated the defendant property as part of the funding of the trust and named the claimant as trustee. The claimant has held and maintained the property as an integral part of the trust since its conveyance to the claimant on or about April 26, 1990. (Joint Stipulation of Facts at 2).

On March 27, 1992, Elizabeth R. Thames was arrested. She pleaded guilty to a charge of possession of a controlled substance in the Circuit Court of Montgomery County, Alabama, and was placed on probation. The United States filed this forfeiture action seeking to acquire title to the property in the trust because the illegal conduct of Elizabeth R. Thames occurred on the defendant property. AmSouth, as owner of the property, asserted the "innocent owner" defense.

## DISCUSSION

■ The "innocent owner" defense is found in 21 U.S.C. § 881(a)(7). The statute provides that all real property which is used to commit or to facilitate the commission of a felony in violation of Title 21 shall be subject to forfeiture "except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted *without the knowledge or consent of that owner*." (emphasis added). Thus, to establish an "innocent owner" defense under Section 881(a)(7), "a claimant need only prove by a preponderance of the evidence that he did

not know of, nor consent to, the proscribed use of defendant property." *United States v. Certain Real Property*, 724 F.Supp. 908, 916 (S.D.Fla.1989).[2]

■ The United States argues that the claimant has no standing to assert the "innocent owner" defense independent of its representation of Elizabeth R. Thames, the beneficiary. The government concedes that claimant had neither actual knowledge nor reason to know[3] that illegal activities were being conducted in or about the property prior to the arrest of Elizabeth Thames. It also concedes that the claimant never authorized, participated in, condoned, or ratified any such activity. (Joint Stipulation of Facts at 3). However, the government argues that the claimant "stands in the shoes of the beneficiary ... and is limited by the actions and knowledge of the beneficiary." (Pl.'s Br. at 7). It further states that "knowledge of the proscribed activity held by the beneficiary is imputed to her personal representatives." (*Id.*) Thus, it is argued, if the beneficiary could not assert innocent ownership, then neither could the trustee.

The government rests this argument on *United States v. Certain Real Property*, 724 F.Supp. 908 (S.D.Fla.1989). In *Certain Real Property*, the court found that the personal representative of the estate had no standing to "interpose an innocent owner defense independent of the named beneficiaries." The court stated that the representative is bound by the knowledge of the beneficiary on whose behalf it acts and, therefore, could only assert defenses to the forfeiture action that the beneficiary could assert. In that case, Conrad Uttal, Sr. sold the defendant property to his parents in 1985 because, as the court found, he was in need of money. Uttal and his two sons continued to live on the property. On October 10, 1987, his mother died and through her will, the defendant property was bequeathed to First National Bank of Palm Beach as part of the funding of a trust

---

**2.** Neither the court's research nor the briefs of the parties disclosed any other case in the United States close to the facts of the instant case. In fact, the government conceded at the pretrial conference that its case would stand or fall on *Certain Real Property*.

**3.** The court, in quoting the admission of the government, is not to be understood as endorsing the position that proof of "reason to know" would be sufficient to defeat the "innocent owner" claim.

on behalf of Conrad Uttal. First National Bank, as trustee, was to hold the property in trust for Uttal during his lifetime, and upon his death, liquidate the property and distribute the proceeds to Uttal's sons. Also, in the will, Judith and Robert Uttal were named as administrators and personal representatives of Conrad Uttal's mother's estate, which included the trust.

The claimants in *Certain Real Property* were Judith and Robert Uttal. When Conrad Uttal was arrested and convicted of manufacturing a controlled substance on the defendant property, the United States instituted forfeiture proceedings. Judith and Robert Uttal, in their capacity as the personal representatives of the estate, filed a verified claim and asserted the "innocent owner" defense. The court found that the Uttals had no standing independent of the beneficiary to assert this defense. The court stated that the claimants' challenge to "the forfeiture as personal representatives ... cannot go forward or exceed that taken by the beneficiaries." *Certain Real Property*, 724 F.Supp. at 916. Because the beneficiary had actual knowledge of the illegal activity and his knowledge was *imputed* to the personal representatives, the court found that the claimants failed to establish the "innocent owner" defense. (emphasis added).

The United States asserts that just as the beneficiary's knowledge is imputed to an administrator of an estate, likewise it should be imputed to a trustee. The government argues that the trustee's standing is derived from the beneficiary and just as the personal representative has no independent standing, neither does the trustee. According to the government's argument, Elizabeth Thames's knowledge of the illegal activity should be imputed to AmSouth, and AmSouth should not have standing to assert the "innocent owner" defense. The court disagrees.

The administrator of an estate and the trustee stand in very different postures in their relationship to the beneficiary. The administrator's relationship to the beneficiary is that of a fiduciary and representative. It is his or her job to see that the beneficiary's rights are correctly adjudicated. 31 *Am. Jur.*2d *Executors and Administrators* § 371 (1989). As such, the administrator derives his or her rights from the beneficiary. The only right independent of the beneficiary is the right to administer the estate of the deceased. That right includes the right to sell the assets, including any real property, in order to pay off the debts of the estate. It is important to note, however, that at no time does title to the real property vest in the administrator.

"[N]either legal nor equitable title to real estate passes to an executor under a will. Rather, title to real estate becomes vested on the death of the owner in his [or her] heirs or devisees subject only to the right of the personal representative, ..., to use it to pay creditors in case the personal estate is insufficient to pay the debts of the estate and expenses of administration."

31 *Am.Jur.*2d *Executors and Administrators* § 490 (1989). This distinction is critical, because, absent this administrative right, the personal representative acts solely as a **representative and fiduciary of the beneficiary** in insuring the beneficiary's rights are correctly adjudicated. Thus, in *Certain Real Property,* the court found that the administrators, as representatives of the beneficiary, had no standing to assert the "innocent owner" defense independent of the named beneficiary because the knowledge of the beneficiary was imputed to the administrators.

However, the trustee, as previously stated, stands in a very different posture than a personal representative in his or her relationship to the beneficiary.[4] The trustee is legal owner of the defendant property. He or she does not derive his or her standing from the beneficiary; his or her standing is independent of the beneficiary. "[A]ccording to the Restatement 2d, Trusts, a trust, ..., is a

4. The court in *Certain Real Property* denied the trustee's motion to intervene. In that case, the court found that the trustee's interest in the defendant property was derived from that of the estate and, as such, was adequately protected by the personal representative. With all deference to the United States District Court for the Southern District of Florida, it is this finding in *Certain Real Property* that the court declines to follow. Obviously, the interest was not adequately protected by the personal representative.

*fiduciary relationship with respect to property,* subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." 76 *Am.Jur.*2d *Trusts* § 1 (1992) (emphasis added). The purpose of a trust is to provide a fund for the maintenance of the beneficiary while at the same time protecting the beneficiary from his or her own improvidence or incapacity. *Id.* § 121. It is the duty of the trustee to institute actions and proceedings for the protection of the trust res and the enforcement of claims and rights belonging to the estate. Furthermore, it is the trustee's duty to do what is reasonably necessary in order to protect the trust res. *Id.* § 656.

These duties clearly distinguish the trustee's role from the role of the personal representative. When a settlor creates a trust, title of the trust property vests in the trustee to protect the property from the beneficiary's creditors and from the beneficiary's incompetence. The trustee's standing to defend the property is independent of the beneficiary and is derived from his or her obligation to protect the trust estate and to fulfill the intentions of the settlor.

With this in mind, the United States would have the court find that the knowledge of the beneficiary is imputed to the trustee and, as such, the trustee cannot assert the "innocent owner" defense. The government premised this argument on the finding in *Certain Real Property* that a personal representative has no standing to assert the "innocent owner" defense independent of the beneficiary. However, this court declines to apply this finding to a trustee. The trustee derives its standing to assert the "innocent owner" defense from its status as legal owner of the property and from its obligations to protect and defend the trust estate. To find otherwise would be to destroy the very purpose behind the creation of a trust.

■ The United States also argues that AmSouth does not have standing because, as claimant, it only has a bare legal interest in the trust property. In support thereof the government cites *United States v. A Single Family Residence,* 803 F.2d 625 (11th Cir. 1986). In that case, the court held that "possession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." *A Single Family Residence,* 803 F.2d at 630. The government seems to argue that AmSouth as trustee holds only a bare legal interest and does not exercise "dominion and control" over the trust property. As trustee, the claimant holds abundantly more than a bare legal interest. The trustee has the responsibility of maintaining the property. The trustee decides what repairs or improvements are needed. The trustee even has the power to sell the property to create additional trust income. Clearly, these powers demonstrate more than a bare legal interest. They are powers that are given to one who exercises dominion and control over the property and, therefore, AmSouth clearly has standing to challenge this forfeiture.[5]

■ The court, having found that the claimant has standing to challenge the forfeiture and to assert the "innocent owner" defense, now turns to the merits of this defense. To establish an "innocent owner" defense under Section 881(a)(7), "a claimant need only prove by a preponderance of the

---

5. The court notes however that this finding is not to be interpreted as a blanket protection for all property held by trustees. The rationale behind the court's finding in *United States v. A Single Family Residence,* 803 F.2d 625 (11th Cir.1986), was that "bare legal title may be insufficient for standing ... based on the candid determination that things are often not what they appear to be, especially in the world of drug trafficking. In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name. [C]ourts must look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else." *A Single Family Residence,* 803 F.2d at 630 (quoting *United States v. One 1977 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294–95 (S.D.Fla.1985)). This court is well aware of the concerns of the government that a trust arrangement should not be allowed to defeat the clear mandate of 21 U.S.C. § 881. This court shares in those concerns and will continue to diligently follow the rationale of *Single Family Residence.* However, in this case, there are no allegations that a "strawman" was present and no allegations of a "sham" trust and, consequently, this rationale is not applicable.

evidence that he did not know of, nor consent to, the proscribed use of defendant property." *United States v. Certain Real Property,* 724 F.Supp. 908, 916 (S.D.Fla.1989). The government admits that the claimant did not have actual knowledge of the illegal activity nor did the claimant authorize, participate, condone, or ratify the beneficiary's conduct. With this admission, the court finds that the claimant has proved a valid "innocent owner" defense.

Accordingly, it is CONSIDERED and ORDERED that the clerk enter JUDGMENT in favor of AmSouth Bank on its claim to defendant property, One Parcel of Property Located at Route 27, Box 411 (Patterson Road), Montgomery County, Alabama and against the United States of America, together with costs herein incurred.