UNITED STATES of America, Plaintiff,

v.

The REAL PROPERTY AND PREMISES KNOWN AS 5528 BELLE POND DRIVE CENTREVILLE, VIRGINIA 22020

and

a 386 IBM Compatible Computer Monitor, Printer, Keyboard, and Related Accessories, Located at 5528 Belle Pond Drive Centreville, Virginia 22020, Defendant.

Civ. A. No. 91–0330–A.

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 22, 1991.

Gordon D. Kromberg, Office of the U.S. Atty., Alexandria, Va., for plaintiff.

John A. Keats, Fairfax, Va., for defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

In this civil forfeiture proceeding, the United States government seeks to forfeit certain real property located at 5528 Belle Pond Drive, Centreville, Virginia, and computer equipment found at the property. The basis for forfeiture is the alleged distribution of marijuana by Robert Hagemeyer, one of the occupants of the property. The claimant, Mr. C. Steven Campbell, denies that either the property or the computer equipment were used to distribute drugs. For the reasons set forth below, the court finds that the real property and the computer equipment are properly forfeited to the government under 21 U.S.C. § 881.

### I

On January 15, 1991, an anonymous informant telephoned the Fairfax police to report that "Bobby" was growing and selling marijuana. The officer who took the call noted the following on the telephone contact sheet: "Caller said that Bobby is selling marijuana and growing it in the basement." The informant gave Bobby's address as 5528 Belle Pond Drive. 5528 Belle Pond Drive was inhabited at that time by Mr. C. Steven Campbell and his ward, Robert A. Hagemeyer, a minor. Officer Rowley testified at trial that "someone told [him]" that the phone call was made by a mother of a friend of Robert Hagemeyer's.

On February 19, 1991, pursuant to the tip, police investigators Sullivan, Rowley, and Goldsby went to the Campbell residence and knocked on the door. Mr. Campbell answered the door, whereupon Officer Sullivan informed him that they wished to discuss a complaint that marijuana was being grown and sold at the premises. After being told that no one would be arrested

that night if Mr. Campbell would lead the officers to the marijuana, Mr. Campbell took the officers to a storage area located in Robert Hagemeyer's basement bedroom.

Inside the storage area, the officers found twenty-five marijuana plants growing in two wooden boxes and seven marijuana plants hanging from the ceiling drying. More marijuana was drying on boards and aluminum foil and the room contained electric growing lights and temperature gauges. Mr. Campbell, an electrical engineer, admitted to doing the wiring for the growing area. A small quantity of marijuana was also found on a plastic plate in the living room and on another plastic plate in Mr. Campbell's bedroom. In total, the officers confiscated approximately thirty-five marijuana plants weighing approximately twenty ounces. The officers also found a computer printout tracking the growing characteristics of approximately thirty marijuana plants. Mr. Campbell told the officers that the information on the printout was stored on the hard-drive of the defendant computer. He also admitted to being the only one who used the computer.

While the officers were collecting evidence, Mr. Campbell admitted, in response to Officer Sullivan's queries, that Robert Hagemeyer grew and sold marijuana on the subject property. Mr. Campbell stated that Robert Hagemeyer sold no more than one-eighth ounce quantities of marijuana from the subject property, no more than six times a month, for approximately $25.00 per eighth ounce. At trial, Mr. Campbell denied any knowledge of Robert Hagemeyer selling marijuana and cast a different light on his statement to Officer Sullivan. He gave the following rendition of their conversation:

> There was numerous times that Investigator Sullivan said he had witnesses that Robert was selling marijuana and what did I know about it. I told him I didn't know anything about it, but he continued to ask the question. At one point he said he had witnesses that Robert Hagemeyer was selling quarter pounds of marijuana and I said if Robert Hagemeyer was selling marijuana it couldn't have been

more than an eighth ounce because I'd never seen any quantity like that dried before.

Because Officer Sullivan made contemporaneous notes of the conversation and because Officer Rowley testified to overhearing the version of the conversation recorded and testified to by Officer Sullivan, the court believes that Officer Sullivan gave the more accurate account of the conversation.

During his own interview with Fairfax police officers, Robert Hagemeyer denied that he sold marijuana on the premises, but agreed that he regularly smoked marijuana and supplied marijuana to friends who smoked it with him at the subject real property. Mr. Campbell was also a regular marijuana user. He admitted to being such at trial and he also admitted, on the day of the search, to having used marijuana from the storage area earlier that day.

On March 1, 1991, the United States filed a complaint for forfeiture. Mr. Campbell filed a claim and answer on March 25, 1991 and on April 11, 1991. The only other individuals who have come forward to claim an interest in the property are Charles F. and Lucille P. Campbell, parents of C. Steven Campbell. The United States recognizes that Mr. Campbell's parents are innocent owners of 15% of the defendant real property and the United States also recognizes the liens of Beneficial Mortgage and Fleet Funding on the defendant real property. Mr. C. Steven Campbell is, therefore, the sole disputed claimant to the defendant property.

On August 27, 1991, Mr. Campbell pled guilty in the Circuit Court of Fairfax County to possession of marijuana and contributing to the delinquency of a minor. He was sentenced to a total of twelve months in jail.

**II**

**A.** *The Real Property*

■ The following real property is subject to forfeiture under 21 U.S.C. § 881(a)(7):

All real property ... which is used, or intended to be used, in any manner or part to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

In a civil forfeiture action, once the government has shown probable cause that the property is subject to forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence "that the factual predicates for forfeiture have not been met." *United States v. One Parcel of Real Estate*, 906 F.2d 110, 111 (4th Cir. 1990) (quoting *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.1986)). The claimant must prove that the property was not unlawfully used or that he did not know about or consent to the illegal use. *Id.*

■■■■ In order for the court to find probable cause that the property was used or was intended to be used to facilitate a crime, the evidence must demonstrate that there was a substantial connection between the property and the underlying criminal activity. *Id.* at 112–13; *see United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1434 (9th Cir.1985). The government has clearly met this burden. The underlying crime is distribution of less than fifty kilograms of marijuana which is punishable by up to five years in prison. 21 U.S.C. § 841(b)(1)(D). The nexus between the house and the crime is clear and substantial. The house functioned as a factory (for the manufacture of marijuana), a warehouse (for the storage of marijuana), and a distribution center (for the sale of marijuana). The physical evidence gathered during the search of the residence, in addition to the claimant's own statements which corroborated the anonymous informant's tip, prove that the house served these functions.

Mr. Campbell was unable to show that the house was not unlawfully used or that he was an innocent owner. His statement to Officer Sullivan regarding marijuana being distributed from the house no more than a half dozen times a month for approximately $25.00 per eighth ounce belies any claim that the house was not used to distribute marijuana or that Mr. Campbell did not know that the house was used to distribute marijuana.

Accordingly, because the government showed a substantial connection between the property and the underlying crime, and because Mr. Campbell was unable to prove that he was an innocent owner or that the property was not unlawfully used, the court finds that the real property located at 5528 Belle Pond Drive is subject to forfeiture under 21 U.S.C. § 881(a)(7).

### B. *The Computer and Accessories*

■■■■ Count II of the government's Forfeiture Complaint seeks forfeiture of Mr. Campbell's 386 IBM compatible computer, monitor, printer, keyboard, and related accessories. The officers found the computer in Mr. Campbell's living room during their search of the property. Next to the computer, the officers also found a computer printout which detailed the growing characteristics of thirty marijuana plants. Because the printout was stored on the hard drive of the subject computer, it is clear that the computer was used to record marijuana growing data. Mr. Campbell did not challenge this conclusion at trial.

Section 881(a)(2) provides for forfeiture to the United States of

All ... equipment of any kind which [is] used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

Because storing marijuana-growing data in a computer is use of the computer in manufacturing a controlled substance in violation of 21 U.S.C. § 841(a)(1), the court finds that the defendant computer is forfeitable to the government under 21 U.S.C. § 881(a)(7).

## III

■ This case caused the court no small amount of concern. Although Mr. Campbell's conduct was certainly serious and deserving of punishment, the court questioned whether losing his home in addition to serving one year in prison was not an excessive penalty for a case involving the small-time sale of marijuana. The officers found twenty ounces of marijuana *plants* which means that the amount of salable marijuana was significantly less. Mr. Campbell and Robert Hagemeyer were both regular marijuana users and, after meeting their own demand for the drug, could not have had much left to sell every month. This conclusion is reinforced by the total absence of physical evidence suggesting distribution. During their search, the officers found none of the items normally associated with marijuana distribution operations. There were no baggies. There was no triple beam scale. There were no owe sheets. There was no cash.

The point of emphasizing the limited nature of the distribution from Mr. Campbell's home is not to minimize the seriousness of his actions, but to emphasize the draconian nature of the forfeiture statute. It takes no prisoners. Congress has established no quantity limits below which the statute does not apply. The government may take a citizen's house if he simply "manufactures" (i.e. grows) one marijuana plant. As the Fourth Circuit noted in *United States v. Santoro*, "it is not for us to determine the type or size of transactions necessary to justify forfeiture of this property.... Congress has set no quantity limits on these predicate acts and consequently, we cannot." 866 F.2d 1538, 1542 (4th Cir.1989). Perhaps the United States government itself summarized the situation best when it argued in an Alabama district court case that "all of Texas would be forfeited under a literal reading of § 881(a)(7) if Texas were owned by one person, and if one acre of it was used in a drug deal with the owner's knowledge or consent." *United States v. Sixty (60) Acres in Etowah County, Ala.*, 727 F.Supp. 1414, 1422 (N.D.Ala.1990).

A perusal of the federal case law makes clear that serious application of the forfeiture law to cases involving relatively small amounts of marijuana is not just hypothetical. Out of 189 reported real property forfeiture cases, eighty-one involved marijuana and some other drug (usually cocaine) and thirty-eight involved marijuana alone. Of the thirty-eight cases involving only marijuana, most involved large quantities of marijuana, but four involved relatively small quantities of marijuana; quantities similar to the amount of marijuana involved in this case. *See United States v. Tax Lot 1500, TP. 38 So., Range 2 East*, 861 F.2d 232 (9th Cir.1988) (forfeiture of real property whereon officers found 143 young marijuana plants, many not more than an inch high, growing on the deck over the garage and in a small (2 1/2' × 5') garden adjacent to the house); *United States v. One Parcel of Property Located at 11 Stephen Street*, 764 F.Supp. 733 (D.Conn.1991) (forfeiture of real property where police seized 4.2 ounces of marijuana, some firearms, and drug paraphernalia); *United States v. One Parcel of Real Property With Bldgs.*, 743 F.Supp. 103 (D.R.I.1990) (forfeiture of real property pursuant to seizure of several packets of marijuana, quantities of marijuana plants, and marijuana seeds and equipment used to grow marijuana); *United States v. Property at Rt. 1 Box 137 Randolph*, 743 F.Supp. 802 (M.D.Ala.1990) (property forfeited after police found forty-nine marijuana plants growing in the owners' fields and a small amount of marijuana drying behind a partition in one of the sheds on the property).

These cases illustrate the point that, although forfeiture for small-time marijuana involvement is relatively rare, the language of § 881(a)(7) allows such forfeitures and the government actively pursues such forfeitures. Mr. Campbell's case is simply the most recent reminder that the federal government's policy with regard to drugs is *zero tolerance.*

An appropriate Order shall issue.